UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BERNARD HAMILTON,

        Plaintiff,

    v.

OFFICER ADAMIK, *et al.*,

        Defendants.

_____/

No. C-06-06268 CW (NJV)

**REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT AND DISMISS LITIGATION (Doc. No. 182)**

**REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF (Doc. No. 175)**

## INTRODUCTION

      The parties to this prisoner civil rights action entered into a settlement agreement that led to a dismissal with prejudice.  Doc. No. 66.  Contending that Defendants reneged on the terms of their settlement agreement, Plaintiff filed a motion to reconsider the order of dismissal.  Doc. Nos. 69-72. The district court granted the motion for reconsideration, reopened the case, and referred the matter to the undersigned for the limited purpose of determining whether Defendants had breached the settlement agreement and whether further court action was required to ensure compliance with the terms of the settlement agreement.  Doc. No. 73.   Defendants filed a motion to enforce the settlement agreement and dismiss the action.  Doc. No. 182.  Plaintiff filed an application for an emergency temporary restraining order, preliminary injunction, and permanent injunction.  Doc. No. 175.

      For the reasons set forth below, the undersigned reluctantly recommends that Defendants' motion to enforce the settlement agreement and to dismiss the litigation be granted, and that Plaintiff's motion for injunctive relief be denied.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BACKGROUND**

Plaintiff filed a 42 U.S.C. § 1983 action in 2006, alleging that Defendants violated his Eighth Amendment rights by failing to provide him with adequate medical care, and violated his Fourteenth Amendment rights by retaliating against him for filing grievances. *See* Doc. Nos. 1 & 6. The parties settled their disputes after attending a settlement conference with the undersigned in February 2008. *See* Doc. No. 49. The parties, however, were unable to agree to the wording of a written settlement agreement. Doc. No. 51. In April 2008, Plaintiff informed the undersigned that Defendants had failed to issue him a laptop computer, which had been a term of the settlement. Doc. Nos. 56, 57 & 58. The parties attended a second settlement conference with the undersigned to address the laptop computer issue. *See* Doc. No. 69 (detailing Plaintiff's efforts to secure promised laptop starting immediately after the first settlement conference in 2008, including a second settlement conference with the undersigned). On June 4, 2008, Plaintiff notified the district court that Defendants had agreed to provide him with a permanent chrono for a laptop computer, and that he would dismiss the action upon receipt of the chrono. Doc. No. 61. On June 9, 2008, Defendants filed dismissal papers together with a letter from Plaintiff to Defendants' counsel, stating "I have obtained the medical chrono for a laptop computer from Dr. Tootell. I have signed and enclosed my request for dismissal with prejudice. I ask that you also copy and sign that pleading as approved. . . . I just ask for a copy with your signature of approval." Doc. No. 63-1. The enclosed Notice of Settlement and Request for Dismissal With Prejudice ("Notice of Settlement") provides in relevant part that:

> (1)   Plaintiff shall be provided a medical chrono allowing him an extra pillow.
> (2)   Plaintiff shall be allowed to possess and use his pulse oximeter as long as it is medically necessary.
> (3)   Plaintiff will be examined by SQSP doctors to determine whether he suffers from autonomic neuropathy, and if so, the appropriate treatment for that condition.
> (4)   Judge Vadas shall retain jurisdiction over this case.
> (5)   In exchange for the foregoing, Plaintiff will dismiss the Complaint with prejudice.

Doc. Nos. 63-1. The Notice of Settlement further states that "[p]ursuant to the [a]foresaid agreement, Plaintiff was examined by SQSP doctors and, based thereon, Dr. Tootell has provided Plaintiff with permanent medical chronos allowing Plaintiff to have one quart of ice twice daily; a

United States District Court

For the Northern District of California

1    'CPAP Pillow'; and a laptop computer."  Doc. No. 63-1; *see also* Doc. No. 175 at 2-3, 7.  The record

2    reflects that Plaintiff was issued permanent chronos for both a laptop and daily ice.  *See* Doc. No 69-

3    2, Ex. 10 (laptop chrono); Doc. No. 175, Exs. 4-6 (ice chronos).  Plaintiff also attached to the Notice

4    of Settlement a copy of a letter from Defendants outlining the terms of the settlement agreement.

5    Doc. No. 65.  Defendants' letter only references the five terms enumerated above and does not

6    address the laptop or ice chronos.

7         On July 7, 2008, the district court signed the Notice of Settlement, and the case was

8    terminated.  Doc. No. 66.

9         After Defendants failed to provide a laptop to Plaintiff (despite the prior agreements and the

10   issuance of a permanent chrono for the laptop), Plaintiff filed another complaint.  *See Hamilton v.*

11   *Thompson*, No. 09-648 CW (N.D. Cal. 2009) ("*Thompson*").  The district court ordered *Thompson*

12   closed and the documents from *Thompson* filed in the present action.  *See* Doc. No. 73 (March 26,

13   2012 Order).

14        In February 2012, Defendants stopped providing ice to Plaintiff on the ground that it was not

15   medically necessary.  *See* Doc. Nos. 182 & 188.  Plaintiff filed a motion for injunctive relief to

16   guarantee his ice delivery.  Doc. No. 175.

17        Defendants' motion to enforce the settlement agreement and dismiss the action was fully

18   briefed and, after a number of continuances initiated by Defendants, was heard on August 17, 2012.

19                                      **DISCUSSION**

20   **A.    The District Court Has Jurisdiction To Enforce The Terms Of The 2008 Settlement**
     **Agreement.**

21

22        The district court has jurisdiction to enforce the 2008 settlement agreement because the terms

23   of that settlement agreement are part of the dismissal order.  *See O'Connor v. Colvin*, 70 F.3d 530,

24   532 (9th Cir. 1995) ("The settlement terms must be part of the dismissal in order for violation of the

25   settlement agreement to amount to a violation of the court's order.  Without a violation of the court's

26   order, there is no jurisdiction") (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994)).

27   The July 7, 2008 dismissal order sets out verbatim the terms of the settlement agreement.  Doc. No.

28   66.  The district court has jurisdiction to enforce this order.

**United States District Court**
For the Northern District of California

**B.  While Defendants Breached The Spirit And Intent Of The Settlement Agreement, They Have Not Breached The Actual Terms Of The Settlement Agreement.**

The actual terms of the Notice of Settlement embodied in the order of dismissal do not include chronos for ice or a laptop. Doc. No. 66. The record shows that the permanent laptop and ice chronos that are referred to in the order of dismissal were integral to Plaintiff's dismissal of the action. *See* Doc. Nos. 55, 57, 58 (letters complaining that Defendants have failed to provide laptop agreed upon during settlement conference); Doc. No. 61 (describing second settlement conference with the undersigned, explaining that "Dr. Tootell stated that she is willing to issue me a medical chrono for a laptop computer. . . . Wherefore, I hereby agree that, upon my receiving the [a]forementioned medical chrono for the laptop computer, I will file [a] motion to dismiss"); Doc. No. 69-2 Ex. 10 (*permanent* laptop chrono signed by Dr. Tootell on May 30, 2008); Doc. No. 175 Exs 4-5 (ice chronos for the months of June through September) & Ex. 6 (*permanent* ice chrono "starting now" signed on May 14, 2008). Unfortunately, Plaintiff acting in *pro per*, did not include either the ice or the laptop as enumerated terms of the settlement agreement.

Defendants argue that they complied with the settlement agreement by providing Plaintiff an extra pillow, allowing him to retain his pulse oximeter, and making "San Quentin physicians available to examine Plaintiff and determine appropriate means of treating not only his condition at the time of the 2008 settlement, but have also offered to treat him on a regular and consistent basis since that date to the present." Doc. No. 182 at 3. Defendants, unfortunately, have the better legal argument. In *Walker v. Gomez*, 609 F. Supp. 2d 1149 (S.D. Cal. 2009), for example, the settlement agreement at issue stated that "the Parties enter this Agreement, in part, because the CDCR, through its current administration, is committed to moving and is moving towards a behavior based system of accountability." When CDCR failed to implement such a system, the plaintiff sued to enforce the settlement agreement. The district court denied the motion, finding that "the language of the provision at issue impose[d] no requirement upon Defendants to implement any particular system. Rather, this appear[ed] to be a statement of intent as an explanation for why the parties entered into this agreement as a whole." 609 F. Supp. 2d at 1159. The court concluded that, "[w]hile Plaintiff may have entered into the agreement believing that a change in policy would occur . . . within a

United States District Court

For the Northern District of California

specified time, the words of the contract . . . do not reflect that intent. . . .  no projected date for implementation was written into the provision nor was there any such duty to fully implement a policy." *Id.* at 1160.  Similarly, in *Brother v. Tehachapi Prison Medical Provider*, 2007 U.S. Dist. LEXIS 14486, *5 (E.D. Cal. Feb. 15, 2007), the settlement agreement provided that the plaintiff would receive an endoscopy.  Plaintiff received the endoscopy, but argued that it was substandard, and that the treatment plan that was recommended by the doctor who performed the endoscopy was not implemented by CDCR.  The court declined to find a violation:

> Pursuant to the settlement agreement, plaintiff was to be provided with an upper GI endoscopy.  The endoscopy occurred and the settlement agreement as to that aspect was fulfilled.  Plaintiff's attempt to expand the agreement to include an endoscopy plaintiff deems satisfactory fails.  Plaintiff's complaint that Dr. Tate is retaliating against him and failing to follow the expert's recommendations do not violate the settlement agreement, as it contained no requirement that Dr. Tate take any action beyond involvement in the consult regarding the upper GI endoscopy.

2007 U.S. Dist. LEXIS at *5.  Most recently, in *Williams v. Horel*, 2012 U.S. Dist. LEXIS 75821 (N.D. Cal. May 31, 2012), the court denied a plaintiff's motion to reopen a case that had been settled before the undersigned.  The plaintiff, a prisoner, claimed that defendants violated his right to practice his religion by failing to provide him with an adequate vegetarian diet.  The settlement agreement in that case stated that the "[d]efendants . . . agree to review vegetarian food service procedures within 30 days[,]" but it did not require defendants to make any specific changes to the vegetarian diet program.  The district court concluded that, based on the absence of any requirement that defendants take action, "plaintiff's claims that defendants have not changed the menu or increased vegetarian  portion sizes are insufficient to show defendants have not complied with the settlement agreement."  2012 U.S. Dist. LEXIS 75821, *5.  In each of these three cases, it appears that the settlement agreements were drafted in a manner that did not reflect the relief that the prisoners believed they had negotiated in the course of their settlement discussions.  And in each of these three cases, the district courts reviewing the motions to enforce the settlement agreement or to reopen the case concluded that there had been no actionable violation of the settlement agreements at issue.

        Similarly, although there is no doubt that Plaintiff entered into the 2008 settlement

**United States District Court**
For the Northern District of California

to end the ice dispute and obtain a laptop computer, the settlement agreement does not include the provision of these items as terms of the settlement. The Notice of Settlement requires that "Plaintiff will be examined by SQSP doctors to determine whether he suffers from autonomic neuropathy, and if so, the appropriate treatment for that condition." Doc. No. 63-1. The ice and laptop chrono are described by Plaintiff as items that were provided "pursuant to the [a]foresaid agreement" (*id.*), but they are not part of the agreement. Defendants examined Plaintiff, and in so doing, fulfilled that provision of the settlement agreement. The undersigned regretfully concludes that the district court lacks the power to order Defendants to provide a laptop and ice to Plaintiff under the terms of the Notice of Settlement.

## REPORT AND RECOMMENDATION

For the reasons stated above, the undersigned recommends that the district court grant Defendants' motion to enforce the settlement agreement and dismiss the action. In light of the above recommendations, the undersigned further recommends denying Plaintiff's request for injunctive relief.

Any party may file objections to this report and recommendation with the district court within fourteen (14) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) & (C); Fed. R. Civ. Proc. 72(b); Civil L.R. 72-3. Failure to file objections within the specified time may waive the right to appeal the district court's order.

Dated: September 4, 2012

_____

Nandor J. Vadas
United States Magistrate Judge

6